**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HARVEY RISHIKOF, As personal representative of the estate of Trudith N. Rishikof, deceased,<br><br>    Plaintiff,<br><br>    v.<br><br>KAMAL MORTADA and SWISS CONFEDERATION,<br><br>    Defendants. | Civil Action No. 11-2284 (BJR)<br><br>ORDER GRANTING MOTION TO DISMISS |

## I.    INTRODUCTION

Defendants' Motion to Dismiss Kamal Mortada for Lack of Jurisdiction [Dkt. No. 26] was referred to Magistrate Judge Alan Kay for a report and recommendation pursuant to Local Civil Rule 72. Magistrate Judge Kay filed a Report and Recommendation on June 10, 2014 [Dkt. No. 33]. He recommended that this Court find that Defendant Mortada does not qualify for common law foreign immunity, and therefore, further recommended that this Court deny Defendants' motion to dismiss. Defendants filed objections to the Report and Recommendation on June 24, 2014 [Dkt. No. 34].

Having reviewed the Report and Recommendation, Defendants' objections, Plaintiff's response thereto, and the underlying record, the Court HEREBY concludes that Defendant Mortada is entitled to immunity under the common law, and therefore, DECLINES TO ADOPT the Report and Recommendation, and further, GRANTS Defendants' motion to dismiss. The reasoning for this Court's decision is set forth below.

1

## II.  BACKGROUND

Plaintiff Harvey Rishikof ("Plaintiff") is the personal representative for the estate of his late wife, Trudith N. Rishikof. On October 6, 2011, Defendant Kamal Mortada ("Mortada") was driving a vehicle owned by Defendant Swiss Confederation while he was in the process of delivering a package from the Swiss Embassy to the World Bank. Mortada, who Plaintiff alleges is a legal resident of Washington, D.C., was employed as a driver and messenger by the Swiss Confederation. Dkt. No. 1 "Compl." at ¶¶ 1, 6. As Mortada was making a turn, his vehicle struck and killed Ms. Rishikof, who was walking in a crosswalk. *Id*.

On December 22, 2011, Plaintiff filed this civil lawsuit alleging claims of motor vehicle negligence and recklessness against Mortada and the Swiss Confederation, jointly and severally. *Id*. at ¶ 2. Plaintiff alleges that this Court has jurisdiction over the Swiss Confederation pursuant to 28 U.S.C. §§ 1605(a)(5) and 1330. *Id*. He further asserts that this Court has supplemental jurisdiction over the claims arising under District of Columbia law pursuant to 28 U.S.C. § 1367. *Id*.

The Swiss Confederation concedes that Mortada is an employee of Switzerland and that he was acting within the scope of his employment at the time of the tragic accident. *See* Dkt. No. 26-2. In addition, the Swiss Confederation has agreed to "accept any legal liability for Mr. Mortada's actions that arises out of the claims" in this lawsuit. *Id*.

## III.  DISCUSSION

Rule 72(b) of the Federal Rules of Civil Procedure authorizes the referral of dispositive motions to a magistrate judge for a report and recommendation. When a party files written objections to any part of the magistrate judge's recommendation, the court considers *de novo*

those portions of the recommendation to which objections have been made, and "may accept, reject, or modify the recommended decision[.]" Fed. R. Civ. P. 72(b).

Defendants move to dismiss Plaintiff's claims against Mortada for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) on the grounds that: (1) Mortada is immune under common law foreign immunity, and (2) the Swiss Confederation is the real party in interest. Defendants argue that Mortada is entitled to common law immunity from this lawsuit because the acts underlying Plaintiff's claims are admitted to be official acts taken within the scope of Mortada's individual duties as an agent of the Swiss Confederation, and the Swiss Confederation has accepted responsibility for the acts at issue.[1] Alternatively, Defendants argue that because Plaintiff seeks $10 million in damages from the Swiss Confederation for the official actions of its agent—Mortada—this suit should be treated as an action against the Swiss Confederation and the claims against Mortada should be dismissed. In addition, if this Court fails to dismiss Mortada from this lawsuit, Defendants request that this Court strike Plaintiff's jury demand because the Swiss Confederation cannot be subject to a jury trial or jury verdict.

A.     **Standard of Review**

When a party files a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the plaintiff[ ] bear[s] the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *Bank of Am., N.A., v. F.D.I.C.*, 908 F. Supp. 2d 60, 76 (D.D.C. 2012) (citing *Biton v. Palestinian Interim Self–Gov't Auth.*, 310 F. Supp. 2d 172, 176 (D.D.C. 2004)). Because subject matter jurisdiction focuses on a court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure

---

[1]     Mortada is not an accredited member of the Swiss Confederation's foreign diplomatic personnel. Dkt. No. 26-1 at 3. Accordingly, Defendants concede that he is not entitled to immunity under the Vienna Convention. *Id.*

3

that it is acting within the scope of its jurisdictional authority. *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).

### B.     Common Law Foreign Immunity

In *Samantar v. Yousuf*, 560 U.S. 305 (2010)**,** the Supreme Court held that a foreign official sued for conduct undertaken in his or her official capacity is not a "foreign state" entitled to immunity from suit under the Foreign Sovereign Immunity Act ("FSIA"). *Id.* at 325-26. However, the foreign official may be entitled to immunity under the common law. *Id*. at 325. The Court noted that "[a]lthough Congress clearly intended to supersede the common-law regime for claims against foreign states, we find nothing in [FSIA's] origin or aims to indicate that Congress similarly wanted to codify the law of foreign official immunity." *Id*.

Under common law foreign immunity, a foreign official is entitled to one of two different types of immunity: status-based or conduct-based immunity. *Yousuf v. Samantar*, 699 F.3d 763, 774 (4th Cir. 2012); *Sikhs for Justice v. Singh*, 2014 WL 4068629, at *2 (D.D.C. Aug. 19, 2014). Here, the issue is whether Mortada is entitled to conduct-based immunity.[2] Conduct-based immunity is available to "any [] [p]ublic minister, official, or <u>agent</u> of the [foreign] state with respect to acts performed in his official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state." *Restatement (Second) of Foreign Relations Law of the United States* § 66 (1986) (emphasis added); *Matar v. Dichter*, 563 F.3d 9, 14 (2d Cir. 2009) (quoting *Restatement (Second) of Foreign Relations Law of the United States* § 66(f) (1965) ("the common law of foreign sovereign immunity recognize[s] an individual official's entitlement to immunity for 'acts performed in his official capacity.'").

---

[2]     The parties do not dispute that Mortada is not entitled to status-based immunity, which is limited to diplomats and sitting heads-of-state. *See Sikhs for Justice v. Singh*, 2014 WL 4068620, at *2 (D.D.C. August 19, 2014); Chimene I. Keitner, *The Common Law of Foreign Official Immunity*, 14 Green Bag 2d 61, 63 (2010).

According to the common law, immunity is determined through "a two-step procedure." *Samantar*, 560 U.S. at 311. The official can "request a suggestion of immunity from the State Department." *Id.* (internal quotation marks omitted). If the State Department takes no action, "a district court ha[s] authority to decide for itself whether all the requisites for such immunity exist[]." *Id.* (internal quotation marks omitted). Here, there is no indication that Mortada or the Swiss Confederation requested a suggestion of immunity from the State Department. Accordingly, this Court must determine whether "all the requisites for immunity exist." *Id.*

As stated above, the "requisites for [conduct-based] immunity" are: (1) the actor must be a "[p]ublic minister, official, or agent of the [foreign] state"; (2) the act must have been performed as part of the actor's "official duty"; and (3) "exercising jurisdiction" would have the effect of "enforc[ing] a rule of law against the [foreign] state." *See Restatement (Second) of Foreign Relations Law of the United States* § 66 (1986). The Court will address each requirement in turn.

### 1. Whether Mortada Is an Agent of the Swiss Confederation for Purposes of Common Law Foreign Immunity

Plaintiff alleges and Defendants concede that Mortada is an agent of the Swiss Confederation. *See* Compl. at ¶ 6. Nevertheless, Plaintiff charges that Mortada's status "as a low-level deliveryman [] renders him ineligible to invoke 'foreign official immunity'" under the common law. Dkt. No. 35 at 5. Magistrate Judge Kay agreed with Plaintiff, recommending that this Court deny immunity to Mortada due to Mortada's lack of authority to act in a decision-making capacity on behalf of the Swiss Confederation. *See* Report and Recommendation, Dkt. No. 33 at 6 (stating that because Mortada does not have "authority to make decisions on behalf of the Swiss Confederation," he does not fit within the definition of "foreign official" for purposes of common law foreign immunity).

Magistrate Judge Kay's conclusion is understandable given that the majority of cases that address common law conduct-based immunity involve foreign officials with clear decision-making authority. *See*, *e.g.*, *Belhas v. Ya'alon*, 515 F.3d 1279, 1282 (D.C. Cir. 2008) (defendant was a former head of Israeli Army Intelligence); *Yousuf*, 699 F.3d 763 (defendant was "a high-ranking government official in Somalia"); *Sikhs for Justice v. Singh*, 2014 WL 4068629, at \*2 (D.D.C. Aug. 19, 2014) (defendant was the former Prime Minister of India). In fact, the only case to which the parties cite that does not involve a high level official is *Richardson v. Attorney General of the British Virgin Islands*, 2013 WL 4494975 (D.V.I. Aug. 20, 2013). *Richardson* involved a motor vehicle negligence action against a foreign customs officer. The *Richardson* court concluded that the customs officer was entitled to common law immunity because the "alleged actions which [gave] rise to the [Plaintiffs'] complaint were undertaken within the scope of his duty and thus fit neatly within the general contours of official-act immunity." *Id*. at \*16. Magistrate Judge Kay distinguished the *Richardson* case from the present case, noting that, unlike Mortada, the customs official in *Richardson* had authority to make decisions on behalf of the British Virgin Islands.

This Court finds that it is more in keeping with the common law to conclude that decision-making authority is not a required element. First, the Supreme Court noted in *Samantar* that conduct-based immunity may extend to an "agent" of a foreign state. *Samantar*, 560 U.S. at 321 (quoting *Restatement (Second) of Foreign Relations Law of the United States* at § 66); *see also*, *Yousuf*, 699 F.3d at 774 (noting that "numerous domestic courts [have] embraced the notion, stemming from international law, that the "immunity of a foreign state … extends to … any … public minister, official, or <u>agent</u> of the state with respect to acts performed in his official

6

capacity") (quoting *Restatement (Second) of Foreign Relations Law of the United States* at § 66) (emphasis added)).

Second, past case law has not focused on the degree of an official's "authority" to act on behalf of the foreign state. Rather, it has been the act itself and whether the act was performed on behalf of the foreign state and thus attributable to the state that has been the focus of the courts' holdings. The rank of the agent who performed the act was not the determining factor. *See*, *e.g.*, *Yousuf*, 699 F.3d at 774 (conduct-based immunity "stands on the foreign official's actions, not his or her status"); *Matar*, 563 F.3d at 14 ("An immunity based on acts—rather than status—does not depend on tenure in office."); *see also*, Hazel Fox, *The Law of State Immunity* at 455 (2d. ed. 2008) ("The doctrine of the imputability of the acts of the individual to the State … in classical law… imputes the act solely to the state, who alone is responsible for its consequence. [Therefore] any act performed by the individual *as an act of the State* enjoys the immunity which the State enjoys.") (emphasis added).

### 2. Whether Mortada Was Acting within the Scope of his Employment for Purposes of Common Law Foreign Immunity

The second required element for common law foreign immunity is that the challenged act must have been one that was performed as part of the agent's "official duty." Here, the Complaint charges that the tragic accident occurred while Mortada was acting within the scope of his employment. Compl. at ¶ 6; *see also*, Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkt. No. 27 at 2 ("it is beyond dispute that Mortada was within the scope of his employment with the Swiss when he killed Ms. Rishikof"). Defendants do not challenge Plaintiff's assertion; indeed, the Swiss Confederation has acknowledged that it is responsible for Mortada's actions. *See* Letter from the Ambassador of Switzerland to the United States dated December 19, 2013, Dkt. No. 26-2, (confirming that the Swiss Confederation will "accept any

7

legal liability for Mr. Mortada's actions"). Nevertheless, Plaintiff now attempts to retreat from his assertion that Mortada was conducting Embassy business when the accident occurred, suggesting instead that Mortada was actually on his way to visit his wife. Dkt. No. 27 at 2.

"Where a plaintiff blatantly changes his statement of facts in order to respond to the defendants['s] motion to dismiss…[and] directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true." *Hourani v. Mirtchev*, 943 F. Supp. 2d 159, 171 (D.D.C. 2013) (quoting *Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008)); *see also*, *Teltschik v. Williams & Jensen, PLLC*, 683 F. Supp. 2d 33, 41 (D.D.C. 2010) ("A plaintiff may not assert new allegations at the summary judgment stage if such allegations amount to a 'fundamental change' in the nature of plaintiff's claims."). This Court rejects Plaintiff's attempt to circumvent the clear allegations in his Complaint—Mortada was acting within the scope of his employment when the tragic accident occurred.

Moreover, Plaintiff's revised version of the facts, even if accepted by this Court, would not support Plaintiff's argument against dismissal. To the contrary, the revised fact scenario would warrant dismissal of this case in its entirety. This is because Plaintiff alleges, and the Swiss Confederation concedes, that this Court has jurisdiction over Switzerland pursuant to the tortious activity exception to the Foreign Sovereignty Immunity Act ("FSIA"). The tortious activity exception to the FSIA provides jurisdiction over noncommercial tort actions "in which money damages are sought against a foreign state for ... damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state." 28 U.S.C. § 1605(a)(5). In order to find that a foreign state can be sued under the tortious activity exception, a court must find: (1) that the tortious acts of individual employees of the sovereign were

undertaken within the scope of employment, and (2) that the claim is not based upon the exercise or failure to exercise a discretionary function. *Id*. Therefore, if indeed Mortada was acting outside the scope of his employment, then the tortious activity exception would not apply, this Court would lack jurisdiction over the Swiss Confederation, and the claims against the Swiss Confederation would have to be dismissed. *See Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 173 (5th Cir. 1994) (citing *Joseph v. Office of Consulate General of Nigeria*, 830 F.2d 1018, 1025 (9th Cir. 1987), *cert. denied*, 485 U.S. 905 (1988)) (noting that the tortious activity exception to the FSIA "requires a finding that the doctrine of respondent superior applies to the tortious act [] committed by the employee of the foreign state"). Further, because the only basis for this Court's jurisdiction over the state law claims in this lawsuit is supplemental jurisdiction, those claims should be dismissed if the Swiss Confederation was no longer a defendant in the lawsuit. Without the Swiss Confederation, this lawsuit would simply be a dispute between District residents over matters governed by District law, which present no federal claim or other independent basis for federal jurisdiction. *See, e.g., Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d. Cir. 2008) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)) ("Certainly, if the federal claims are dismissed before trial … the state claims should be dismissed as well."); *Heatherly v. Malika*, 2013 WL 5754106, at *2 (N.D. Cal. Oct. 23, 2013) (quoting *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) ("The Supreme Court has stated, and we have often repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state law claims.'").

      **3.**     **Whether Exercising Jurisdiction Will Have the Effect of Enforcing a Rule of Law against the Swiss Confederation**

The final requirement for establishing entitlement to common law immunity is whether, if this Court exercises jurisdiction over Mortada, it will have the effect of enforcing a rule of law against the Swiss Confederation. Plaintiff argues that it will not. In Plaintiff's view, this is a simple traffic accident case; therefore, if this Court were to "exercise[e] jurisdiction over Mortada, it would be to "[e]nforc[e] the rules of American roads," the effect of which would not "impinge on the sovereignty of [Switzerland]." Dkt. No. 35 at 4. Defendants counter that because Plaintiff sued for joint and several liability, the relief sought by Plaintiff could run directly against the Swiss Confederation. Therefore, according to Defendants, exercising jurisdiction would have the effect of enforcing a rule of law against a foreign state. Dkt. No. 26 at 6.

The Court finds Defendants' argument persuasive. The salient fact is that Plaintiff seeks to hold the Swiss Confederation jointly and severally liable for Mortada's actions. By claiming that the Swiss Confederation is liable for Mortada's actions, Plaintiff—by definition—is seeking to enforce a rule of law against the Swiss Confederation. *See*, *e.g.*, *Brown v. Argenbright Security, Inc.*, 782 A.2d 752, 757 (D.C. 2001) (quoting *Boykin v. District of Columbia*, 484 A.2d 560, 561 (D.C. 1984)) ("Under the doctrine of *respondeat superior*, an employer may be held liable for the acts of his employees committed within the scope of their employment."); *District of Columbia v. Evans*, 644 A.2d 1008, 1023 (D.C. 1994) (stating that "[i]f the plaintiff prevails against the [District's] police officers on a negligence theory, the District may also be subject to liability for negligence under the doctrine of *respondeat superior*").[3] Therefore, if this Court

---

[3] The Court notes that the Complaint does not specifically allege that the Swiss Confederation is liable under the doctrine of *respondeat superior*. However, taking the allegations in the Complaint as a whole, it is clear that this is the theory under which Plaintiff holds the Swiss Confederation accountable. Plaintiff does not allege that the Swiss Confederation, itself, committed a negligent act that was a proximate cause of the injury; rather, Plaintiff asserts that the Swiss Confederation is liable for Plaintiff's damages based on the nature of its relationship with Mortada (*i.e.*, employer/employee relationship).

were to exercise jurisdiction over Mortada, it would have the effect of "enforce[ing] a rule of law against [Switzerland]."

If, on the other hand, Plaintiff had not sued the Swiss Confederation for joint and several liability, but instead chose to proceed exclusively against Mortada, then Mortada would not be entitled to immunity. Indeed, the Restatement addresses this very factual situation:

> X is an employee of the naturalization service of state A employed in state B for the purpose of inspecting the credentials of prospective migrants from B to A. While driving a car on an official mission, he injures Y, a national of B. Y sues X in B, alleging that his injury was due to the negligence of X. X is not entitled to the immunity of A under § 65.

Restatement § 66, illustration 3. In this illustration, Y only sues X; therefore, X is not entitled to immunity (because exercising jurisdiction would have no effect on State A). If Y had also sued State A for joint and several liability, then X would be entitled to immunity (because exercising jurisdiction would have the effect of enforcing a rule of law against State A).

### C. The Jury Trial Prohibition under the FSIA

As discussed above, this Court has jurisdiction over the Swiss Confederation pursuant to the tort activities exception under the FSIA, something the parties do not dispute. *See* 28 U.S.C. § 1605(a)(5)(B). The Supreme Court has recognized that "Congress' primary purpose in enacting [the tort activities exception] was to eliminate a foreign state's immunity for traffic accidents and other torts committed in the United States[.]" *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439-40 (1989). However, in crafting this exception to sovereign immunity, Congress was careful to maintain the international standard that a foreign state shall not be subject to a jury trial. *See*, *e.g.*, *Arango v. Guzman Travel Advisors*, 761 F.2d 1527, 1532 (11th Cir.1985) (finding that "[b]y their express terms, 28 U.S.C. §§ 1330 and 1441(d) prohibit a case brought against a foreign state, as defined in section 1603, from being tried before a jury ....

11

[and] efforts to circumvent this prohibition against jury trials" have been rejected in other circuits). If this Court were to exercise jurisdiction over Mortada as well as the Swiss Confederation, and Plaintiff obtained a jury verdict against Mortada for which the Swiss Confederation was liable, Mortada would have circumvented Congress' prohibition against subjecting foreign states to jury verdicts. Therefore, Plaintiff has a choice. He can proceed exclusively against Mortada and have a jury trial or he can proceed exclusively against the Swiss Confederation and have a bench trial. What he cannot do is proceed against both under a theory of joint and several liability.

## IV.     CONCLUSION

Based on the foregoing, this Court concludes that the relevant inquiry into whether Mortada is entitled to common law foreign immunity is whether Mortada is an agent of the Swiss Confederation, whether the conduct giving rise to Plaintiff's claims occurred in the scope of that agency, and whether enforcing the claims would have the effect of enforcing claims against the Swiss Confederation. The answer to each of these questions is "yes"; therefore, Mortada is entitled to conduct-based immunity under the common law.[4] This Court DECLINES to adopt the Report and Recommendation and, instead, GRANTS Defendants' motion to dismiss Defendant Mortada from this action with prejudice.

Dated this 29th day of September, 2014.

---

[4] Plaintiff also argues that Defendants waived Mortada's right to immunity because they failed to "rais[e] the defense" in their "responsive pleading." Dkt. No. 27 at 5. Plaintiff fails to cite to any authority where a court has determined that an individual waived his common-law immunity defense by filing an answer and participating in discovery. To the contrary, immunity is an issue of subject-matter jurisdiction and, pursuant to the Federal Rules of Civil Procedure, "[i]f the court determines *at any time* that it lacks subject jurisdiction, the court *must* dismiss the action." Fed.R.Civ.P 12(h)(3) (emphasis added). The FSIA cases to which Plaintiff cites are inapposite because the statute explicitly provides that foreign sovereign immunity under the FSIA may be waived. *See* 28 U.S.C. § 1605(a)(1); *Canadian Overseas Ores Ltd v. Compania de Acero del Pacifico S.A.*, 727 F.2d 274, 277 (2d Cir. 1984) (noting that "[u]nlike other questions of subject matter jurisdiction," foreign sovereign immunity pursuant to the FSIA "is a question of statutory subject matter jurisdiction" that "can be waived either explicitly or by implication."). Absent a statutory limitation such as section 1605(a)(1), a party may raise a subject-matter jurisdiction at any stage in the litigation.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge